[The Commonwealth *ex rel.* Hall v. The Canal Commissioners.]

# Huston's Appeal.

A testator, having given specific and residuary legacies to his grand-children, devised his real estate to his executors to be sold for their payment, and added: "I allow that the legacies bequeathed by me to my three first named grand-children shall be lent out by the executors of this will as soon as it shall be

[Huston's Appeal.]

received by them, so that it shall bring interest until my said grand-children shall severally become of age, when they are to receive the amount:" *Held,* that no delay of the executor, in making sale of the real estate out of which the legacies were to be paid, would defeat the right of the specific legatees to interest on their legacies from one year after the death of the testator, unless such delay were occasioned by something contained in the will, or by the procurement or fault of the legatees themselves.

APPEAL from the decree of the orphans' court of *Cumberland* county, by Thomas M'Cullough, guardian of the children of James Huston, deceased.

The following facts were agreed upon.

John Harper administrator *de bonis non,* with the will annexed of William Huston, deceased.

September 4, 1839, his account being presented and passed by the orphans' court, there was found a balance in his hands of 11,878 dollars and 99 cents, subject to distribution according to the will of the said William Huston. A rule was granted to show cause why the same should not be distributed. All the parties in interest appear in court, and agree to the following facts, and that the court make a decree of distribution thereon, subject to the right of any party in interest to appeal without oath or bail.

On the 9th of December 1820, William Huston made his last will, by which he disposed of his estate, real and personal, as follows.

Will of William Huston, dated 9th of December 1820, proved 19th of November 1824. Letters issued to John Harper, &c., 11th of January 1826.

" I give to my wife Mary the house I now live in. I also give to my said wife all my household and kitchen furniture. I also leave to my wife my servant boy Harry; also two or three cows and one horse; also all the incomes from my farm, except so much as shall be sufficient to keep it in good repair and pay the taxes; also seven hundred dollars out of the price of said farm when sold; I also give unto my wife my carriage and harness belonging to it.

" I give and bequeath unto my grand-daughter, Nancy Mathers, two thousand dollars.

" I give and bequeath unto my grand-son, William B. Johnson, one thousand dollars.

" I give and bequeath unto my grand-daughter, Jane Johnson, one thousand dollars.

" I give unto my son, James Huston, two hundred dollars, and to each of his children two hundred dollars.

" I also give unto my wife the wagon, the horse-gears and plough.

" I allow that the legacies bequeathed by me to my three first named grand-children shall be lent out by the executors of this will, as soon as it shall be received by them, so that it shall bring interest until my said grand-children shall severally become of age,

when they are to receive the amount; and, as touching all the rest, residue and remainder of my estate, real and personal, I give and bequeath as follows, to wit:

" I allow my said farm, lying part in West Pennsborough and part in Dickinson township, to be sold and conveyed to the purchaser by my executors hereinafter named, as soon as they and my wife shall agree upon the sale thereof. I also allow my executors to sell my log-house, with the breadth of the house as far back as the stone-wall, and to include the old stable, with a passage along the east side of the lot, to wit: the division line to be made at the discretion of my said executors. And the said last mentioned property to be sold by them as soon as they can make sale thereof to advantage; and also I empower them to convey the same to the purchaser.

" The two lots of ground I hold in Newton township I give and devise unto my wife.

" It is my will that all my lawful debts shall be paid, and that the residue, the above mentioned legacies being first paid, shall be equally divided between my son James and my three just named grand-children, and my three grand-children the children of my son James, to wit: to be divided into seven equal shares, one of which to the seven last named persons. If my grand-daughter, Nancy Mathers, should die under age or without lawful issue, I allow her share to be divided equally to and among my other heirs. If either of my grand-children, William B. Johnson or Jane Johnson, should die under age, and without lawful issue, I allow the survivor of them to receive the legacy of the deceased one; but, if they should both die under age or without lawful issue, I allow the legacies mentioned to them both to be equally divided among my other heirs.

" I constitute my wife Mary and my son James and William M'Culloch to be the executors of my will," &c.

On the 22d day of January 1821, William Huston died, and a *caveat* was entered against the probate of his will, and an issue *devisavit vel non* was directed by the register's court. On the 24th of May 1824, the *caveat* was withdrawn, and the will was duly proved on the 19th of November 1824, and letters testamentary issued to John Harper and William Line, Esquires, on the 11th of January 1826. On the 12th day of May 1822, Mary Huston, the widow of the testator, died, and, after her death, the rents of the real estate, viz: the farm and house and lot mentioned in the will of the testator were received by John Harper, and charged to him in his administration account, as per same, which constitute also part of the evidence in this case.

On the 1st of April 1826, the house and lot, ordered by the testator to be sold, were sold by the administrator, with the will annexed; and, on the 1st of April 1833, he sold the farm, and the purchase-money is also charged in his administration account.

The question for the opinion of the court is, whether the pecuniary legacies mentioned in the will of William Huston bear interest, and from what period, and the court to make distribution accordingly?

Decree of the court.

The question submitted to the court is, whether the legacies to William B. Johnson, Jane Johnson and Nancy Mathers bear interest, and from what period? There is no controversy as to the other legacies which have been paid.

The will of William Huston contains these provisions, " I give and bequeath to my grand-daughter, Nancy Mathers, 2000 dollars; I give and bequeath to my grand-son, William B. Johnson, 1000 dollars; I give and bequeath to my grand-daughter, Jane Johnson, 1000 dollars." Then after certain other bequests the testator adds, " I allow that the legacies bequeathed by me to my three first named grand-children shall be lent out by the executors of this will, as soon as it shall be received by them, so that it shall bring interest until my said grand-children shall severally become of age, when they are to receive the amount." To his wife he gives the house in which he lives, certain personal property, all the incomes of his farm, (except so much as shall be sufficient to keep it in repair and pay the taxes,) and 700 dollars out of the price of said farm when sold. He allows that this farm be sold by his executors, as soon as they and the widow shall agree upon the sale, and further empowers his executors to sell certain other real estate, consisting of a house and lot and stable. The testator further directs, that his lawful debts shall be paid, and the residue of his estate (the above mentioned legacies being first paid) shall be equally divided between his son and grand-children. The personal property of William Huston, at the time of his death, exceeded his debts upwards of 700 dollars, and his real estate, not devised to his widow, consisted of the farm and house and lot and stable above mentioned. He died in January 1821, and his widow in May 1822. The will was proved in November 1824, and letters of administration, with the will annexed, issued to John Harper and William Line January 1826.

For the year 1825 and the subsequent years, until the real estate was sold, the administrators received all the rents, issues, and profits arising therefrom, which are charged in the administration account. The house and lot were sold in 1826, and the farm in 1833. The legatees only claim interest on their legacies from the 1st of April 1825, which renders it unnecessary to decide whether they are entitled to it before that time. It appears that from January 1826, the administrator had the control of the lands and of the other property of the testator, and of which they could at any time, by a sale, have raised sufficient money to discharge the debts and pay these legacies; and, although all the real estate was not sold until 1833, yet it seems that they received the rents and profits of the lands and the dividends of the bank stock from April 1825, all of which are charged in their accounts, and go to enlarge

the residuum of the estate. The court, therefore, is of the opinion, that interest is allowable on the legacies to William B. Johnson, Jane Johnson and Nancy Mathers, and that the same should be computed from the 1st of April 1825, and the distribution be made accordingly.

Errors assigned:

1. The court should have allowed interest on the pecuniary legacies to James Huston, and on the legacies to his three children from one year after the death of testator.

2. Interest should not have been allowed to Nancy Mathers and the two Johnsons until after the sale of the real estate, and funds come to the hands of the administrator for the purpose of paying them. Or,

3. Not being payable until the legatees severally arrived at the age of 21 years, their legacies did not, by operation of law, bear interest, and, if the administrator omitted or failed to realize a fund and put it out to interest according to the direction of the will, the omission cannot be compensated out of the bulk of the estate, in favour of such legatees and in prejudice of the rights of the residuary legatees.

4. There were no funds in the hands of the administrators for the payment of the said three legatees, until after the sale of the farm to Mr Johnson, and the yearly instalments fell due. All the rents and other funds were required and were applied in payment of debts against the testator and repairs and taxes on the lands sold.

5. The executors of the will were made the trustees for the three legatees, Nancy Mathers, &c.; they were to raise the money, and to put it out to interest; if they did not do so, the loss cannot be visited upon the residuary legatees. It is a specific bequest, indicating a particular intention, and the legatees can only claim a benefit upon the terms on which the bequest is made.

*Reed*, for appellants.
*Watts*, for appellees.

The opinion of the court was delivered by

Rogers, J.—A legacy payable at a future day does not carry interest until after it is payable, unless in the case of a legacy to a child, when the parent has made no other provision for its maintenance. And it seems that the exception does not extend to the case of a grandchild; Lupton *v*. Lupton, 2 *Johns. Chan.* 628; Heath *v*. Perry, 3 *Atk.* 101. In this will, although the payment of the legacies is postponed until the grandchildren severally attain the age of twenty-one years, and consequently without some modification or qualification would come within the principle above stated, yet the rule is not applicable when the testator has manifested a different intention. After the several bequests to his grandchildren, he adds, " I allow that the legacies bequeathed by me to my three first named grandchildren shall be lent out by the executors of this

[Huston's Appeal.]

will as soon as it shall be received by them, so that it shall bring interest until my said grandchildren shall severally become of age, when they are to receive the amount." This language is too unequivocal to be misunderstood; it clearly indicates the intention of the testator, that the grandchildren, who appear to have been the principal objects of his bounty, should receive not only their respective legacies, but that, in addition, they should be entitled to interest. But from what time is the interest to be computed? The testator does not say the precise period when it shall commence, but his intention may be collected from the whole will. He directs the executors to put the money out at interest as soon as it should be received. This depends upon the sale of the property which they were ordered to make. It was the duty of the executors to carry out his intention by making sale of the property, and raising the necessary funds in a reasonable time; and what is a reasonable time, by analogy, may be taken to be one year from the death of the testator. The general rule of giving interest to the legatee from the expiration of the year, is not to be extended or controverted upon slight inferences of intention, nor will it yield to the impossibility of getting in the estate so as to pay the legacy within the year allowed for that purpose. And even though the legacy is to come out of a part of the testator's estate, which cannot be recovered for a long time after the year, and the testator directs the legacy to be paid when the money which is to constitute it can be recovered, still the payment of interest, if practicable, or at least the computation of it, will commence from the end of the year after the testator's decease. Wood *v.* Penoyre, 13 *Ves. Jun.* 325; 2 *Roberts on Wills* 115. The testator could not anticipate that difficulties would be thrown in the way of this arrangement. He directs part of the property to be sold, with the assets of his wife, and on her death, in May 1822, all obstacles, if any existed on her part, were removed. The other property was ordered to be sold by the executors as soon as they could make sale thereof to advantage. Immediately after the death of the testator a *caveat* to the will was entered, which was not disposed of till the 24th of March 1824, upwards of three years after the death of the testator. In the intermediate time, for some reason which has not been explained, administration *pendente lite* was not granted. On the withdrawal of the *caveat*, there was nothing, so far as appears, to prevent an immediate sale of the whole estate; but sale of part of it was not made until the 1st of April 1833. When the purchase-money was actually received no where appears.

It is insisted that, until the money is received, these legacies do not carry interest, and if we disregard the intention of the testator, and give the will a literal construction, this would be a legitimate conclusion. But this would be sinning against a cardinal rule of construction, for the objection which has not been met is, that it would defeat the intention of the testator, which manifestly is, that

IX.—2 Q

the legacies should bear interest from a reasonable time, viz: one year after his death; and that the interest should accumulate for the benefit of the legatees.   It cannot be rationally supposed that it ever entered into his mind, that, from any combination of circumstances, this consummation should be indefinitely postponed, or even delayed for several years after his decease.   The precept that equity considers that as done which ought to have been done, here comes into play.   Where the residuary legatees wish to deprive other legatees of that which, under ordinary circumstances, they would be clearly entitled to, they are bound to show that the delay in the sale arose from some of the causes named in the will:—either that the widow refused to consent to a sale, or that the property could not be sold.   But, instead of these contingencies, which alone were in the contemplation of the testator, the reasons of the delay are left to conjecture.   It is not enough to allege the probability that it may have been caused by a combination of circumstances—the litigation which took place, and the depressed state of the value of real property.   It adds to the force of these considerations that it does not appear that the residuary legatees are injured.   They are placed in no worse situation, and it is difficult to perceive the justice in making the delay, which was not caused by any fault of the legatees, operate exclusively for the benefit of others, and in prejudice of their rights alone.   The administrator had the control of all the estate of the testator from 1825, and he could at any time have raised an amount more than sufficient for this purpose by sale; and although it was not done until 1839, yet he received the rents and profits of the land, and the dividends of stock, to an amount exceeding the interest, all of which was accounted for in the administration account, and which contributes and goes to swell the sum total of the estate.   It appears, from the opinion of the court, that the legatees claim interest only from the first of April 1825, which made it unnecessary for them to decide that they were entitled to it before that time.   Interest is, however, computable from one year from the death of the testator.

The appellant also alleges that the court erred in disallowing interest, on the pecuniary legacies, to James Hiester and his children, from one year from the death of the testator.   To this claim there is no reasonable objection, except that it appears that the only question which was submitted to the court was, whether the three first named legacies bore interest, and from what time?   The case seems to have been argued with the concession that the other legacies had been paid, and for that reason the funds having been exhausted, it became unnecessary to allow interest before 1825.   But as it is possible that in this some mistake may have been committed, and we are willing that justice should be done, we think it right to delay entering the final decree until the fact of payment be ascertained.   If, on investigation, it should be found that the whole or a part of these legacies remains due, there can be no diffi-

[Huston's Appeal.]

culty in adjusting the proportion which each will be entitled to receive on the principles which have been indicated.

Decree affirmed.