## Koon's and Wright's Appeal.

113  621
133  436
113  621
170  247
113  621
e220  1  56

1. Interest upon a legacy begins to run from the time it becomes payable; and in determining this time, the directions of the Act of February 24th, 1834, P. L., 83, which provides that, "legacies, if no time be limited for the payment thereof, shall in all cases be deemed to be due and payable at the expiration of one year from the death of the testator," must prevail unless there be language or circumstances apparent upon the face of the will, showing that the testator could not have intended the legacy to be payable at the end of the year.

2. In 1853, by a deed of trust, A. transferred to B. a lot of stocks, the income from which under said deed was payable to him during his life by B., and after his death, in payment of certain annuities; the trust to continue until the death of the last annuitant. A. died testate, in 1858. In his will, he disposed of his estate, *inter alia*, as follows : An annuity to his wife, a legacy of $4000 to C., and a legacy of $10,000 to D., a charitable institution. He directed that the remainder of his estate, including any balance, resulting from the closing of said trust deed, to be paid to his executors, for the purposes expressed in his will, and the remainder by them to be divided among his children. The last annuitant under the trust deed died in 1884. *Held* on distribution of the estate of A., in the hands of his administrator, that D. was entitled to interest on the $10,000 legacy, from one year after the death of A., the testator, until the time of its payment.

March 3d, 1886.  Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the Orphans' Court of *Philadelphia county:* Of January Term, 1886, No. 5.

Appeal of Robert J. W. Koons and Robert J. Wright, from the decree of the said court, confirming the adjudication of the account of the Pennsylvania Company for Insurance on Lives and Granting Annuities, the administrator, of the estate of Joseph Wright, deceased.

The following facts are taken from the adjudication of said account by PENROSE, J.

The testator died May 26th, 1858. By his will, proved June 5th, 1853, he gave an annuity of $400 to his wife, Hannah Wright, for life—directing that an ample fund should be reserved to secure it; a legacy of $4000, payable out of "the proceeds of" his estate, to Eleanor D. J. Hogeland; a legacy of $10,000 to The Industrial and Beneficial Institute of Frankford,—a charitable institution of which he was the originator and founder,—the principal to be invested and the income to be applied to the payment of taxes and repairs of the building which he had erected and given to it, and the balance as to part, for the purposes of a free library and reading room, and as to another part, for supplying fuel and furnishing support

and relief to the poor residents of Frankford, within a circuit of one mile from the building, forever. The residue of his estate was given as hereinafter set forth; it being provided, however, that the balance of the estate after securing the annuity to the wife. should be applied for the payment of the legacies in the order of priority mentioned.

To meet the annuity to the widow there was set apart, under proceedings upon accounts filed by the executors, the sum of $6,700 of City loan, leaving a balance of $1,660, which, in August, 1860, was applied on account of the legacy to Miss Hogeland; and by the report of the auditor of the third account,— (the widow having died April 13th, 1870), the balance of her legacy, with interest from the date fixed by the Act of the Assembly, was awarded, less collateral inheritance tax,—the balance then in the hands of the executors, $2,416.95, being awarded to The Industrial and Beneficial Institute of Frankford, on account of the legacy to it. This report was filed October 25th, 1870.

The executors having died, there came to the present accountant as administrator d. b. n. c. t. a., under letters granted December 3d, 1884, the fund which is the subject of the present account; the balance, composed as there stated, being $43,178.49. The account was admitted to be correct; and the only question is as to the right of the Industrial and Beneficial Institute—the only legatee remaining unpaid—to interest.

The facts with regard to this fund are as follows: On the 24th of June, 1853, the testator transferred to The Pennsylvania Company for Insurance on Lives, &c., one hundred shares of Pennsylvania railroad stock and fifty shares of The Bank of Kentucky stock,—the par value of all being $10,000, —in trust to pay the income to him for life, and at his death, after payment to various persons of sums amounting to $3,900, to pay four annuities, two of sixty dollars and two of one hundred and twenty dollars per annum; the accruing income, as the annuities should respectively cease, to be invested, and at the death of the last of the annuitants, the stocks and securities and all accumulations of interest, &c., to be paid by the trustees " to the executors of the said Joseph Wright, the survivor or survivors of them . . . . . to be by them . . . . . applied to the purposes expressed in any last will and testament of the said Joseph Wright . . . . . made or . . . . . to be made, thereby closing the trust forever." Power to alter or revoke, in the manner stipulated, was reserved; and it was provided that the estate should go " in default of any such declaration or appointment, to the sole and absolute use of the said Joseph Wright, his heirs, executors, administrators and

assigns . . . . . and the whole thereof shall be thereupon assigned and transferred unto the said Joseph Wright, his heirs, executors, and administrators and assigns, for his and their sole and absolute use and behoof forever."

The last annuitant died, the account of the trustee was duly audited in the Court of Common Pleas; and the balance awarded to the accountant as administrator d. b. n. c. t. a.

The will of the testator refers to the trust property and disposes of it and of the residue of his estate as follows: " All the rest, residue, and remainder of my estate . . . . . I give, devise and bequeath to my executors . . . . . including any balance remaining in the hands of The Pennsylvania Company for Insurances on Lives and Granting Annuities resulting from the closing of a trust deed dated June 24th, 1853, as therein directed to be paid over to my executors for the purpose or purposes declared, expressed or directed by me in my last will and testament. In trust firstly to carry out the purposes and intentions hereinbefore expressed and contained; and finally, the remainder to be equally divided between my son, Robert J. Wright, and my two daughters, Frances Elizabeth Koons and Josephine Amanda Wright, the survivors or survivor of them living at the time of my death, share and share alike, &c., &c.

All of the children survived the testator, but Josephine has since died intestate, unmarried and without issue.

The attorneys for Robert W. Koons and Robert J. Wright, while admitting that the balance of the principal of the legacy to the Industrial and Beneficial Institute was now payable, contended that there was no right to demand interest from the fund thus coming to the accountant from the trustee: that the testator knew that it might be many years before the fund could become applicable for the general purposes of his estate, and that in the meantime, as the income was appropriated for the payment of the annuities, he could not have intended that it should also be subject to the payment of interest on legacies, especially as the shares of his children—the natural objects of his bounty—in the residuary estate would thus be reduced to very small amounts.

The auditing judge is unable to adopt this view. It has always been a settled rule that pecuniary legacies bear interest from the expiration of twelve months from the death of a testator, if at any time a fund for their payment should come into the hands of the executor; and our Act of Assembly is explicit upon this point. In Greening v. Barker, referred to by Lord REDESDALE, in Pearson v. Pearson, 1 Shoales & Lefroy, 12, the fund did not become disposable for the payment

of legacies until nearly forty years after the testator's death, but interest was allowed. "The legacy will carry interest, although payment be, from the condition of the estate, impracticable, and although the assets have been unproductive;" Wood *v.* Penoyre, 13 Ves., 334; Williams on Executors, 1533; Martin *v.* Martin, 6 Watts, 67; Lynch's Appeal, 12 W. N. 104. There is nothing in this case to lead to a different result. The testator is shown by the provision with regard to priority of payment to have contemplated the probability that his estate would not, in the first instance, be sufficient to reach all the legacies in full; and it must be presumed that he was aware of the law giving interest to legatees not receiving prompt payment. The provisions of his will could not, therefore, be said to be "carried out" until the legacies with interest had been fully paid; and it is only after the executors have so carried out "the purposes and intentions" expressed in the will, that they are to divide the "remainder" of the trust fund among his three children. The will, in this respect, simply declared what would have been the duty of the executors had it contained no provision whatever: the stocks held by the trustee had been assigned for certain express trusts, and·when these had been accomplished there was, of course, a resulting interest which was an asset of the estate applicable for the payment of pecuniary legacies, even if no power of appointment had been expressed in the trust deed. The mention of this power did not affect the question of ownership: Physic's Appeal, 14 Wright, 123. *Expressio eorum quæ tacite insunt nihil operatur.* But the language of the will is clear and leaves no room for interpretation. The court is not responsible for any hardship which may result.

It will be noticed that the provision for accumulation of the trust fund was valid, under the Act of April, 1853, only so far as it was intended for the purpose of a charity, &c.; and this fact is not, perhaps, unimportant in the consideration of the question. The fund has grown, even after the deduction of the amounts payable under the trust, from what it originally was,—(stocks of the par value of $10,000)—to the size shown by the account.

The collateral inheritance tax on the trust estate was held to be payable by the executors, under the decree upon their account, July 10th, 1860; and this decree was affirmed on appeal: See Wright's Appeal, 2 Wright, 507.

Payment is awarded to The Industrial and Beneficial Institute of Frankford of the balance of legacy, less tax, with interest as follows:

| | | |
|---|---:|---:|
| Legacy less tax, . . . . | | $,9500.00 |
| Interest from May 26, 1859, to October 26, 1870, 11 years, 5 months, | $6;507.50 | |
| Less amount received at date mentioned, . . . . . | 2,416.95 | 4,090.55 |
| Interest from October 26, 1870, to May 26, 1885, (C. B. P. July 18, 1885), 14 years, 7 months, . | | 8,312.50 |
| Additional interest till time of payment, . . . . . | | |
| | | |
| Making the entire amount . . | | $ |

The residue, composed as stated, is awarded in equal shares to the surviving children of the testator and the personal representatives of the said Josephine A. Wright, deceased.

To this adjudication the appellants filed the following exceptions :

1. The learned judge erred in awarding interest on the amount ordered to be paid to the Frankford Association.

2. He erred in crediting the payment made by the executors, of Joseph Wright against interest instead of against principal.

These exceptions were dismissed by the court, ASHMAN, J., and the adjudication confirmed, whereupon the appellants took this appeal, assigning this action of the court for error.

*George Junkin* and *Benjamin Harris Brewster* for appellants.—We maintain that this $10,000 is not an ordinary money legacy; and that the circumstances which surrounded the testator and the true reading of his will show, that interest was not to be paid as in the case of an ordinary money legacy.

It is manifest that the testator designed this to be a special trust; and that no income should be gotten from it until it was received and invested by the trustee.

It cannot be right so to construe the words of this trust as to cause the testator's estate to be chargeable with two interests at the same time, which, with their share of commissions, United States, and state taxes, &c., running over twenty-six years, will amount to upwards of $4,800.

He never intended his trustee to get twenty-four years' interest, or $15,000, at least in one sum, to be expended at one time, or the like.

He was creating a charity fund of a specific amount, which was to be invested, and its yearly income was to flow forth annually, and be so expended.

He, through his trustee, was thus to invest, and each year
3 AMERMAN—40

bestow his annually recurring benefaction, which would be the net income of the fund of $10,000.

This is very different from an ordinary legacy, where the legatee is to get it, and himself use it as he pleases. The presumption in such case, and the law and the plain intent of the testator is that, at the end of one year the legatee is to have the money; and if from any cause, there is delay in the payment of the legacy, interest must be paid.

But when a charity fund is given, not to a charity corporation without more, but to it as a trustee for a specific purpose, to be by it so invested, after it had been received at a future time prescribed, viz: after the decease of the several annuitants who were living when he made his will, and the income when so received to be devoted to specific purposes therein specified in detail; and these are annually recurring purposes; it is manifestly different from an ordinary legacy. The intent is plain, that $10,000, and that sum alone, is to be paid to the testator's trustee for the purpose named.

The rule that a general legacy will carry interest from one year after the testator's death, was adopted for the sake of general convenience as is seen in the case of Wood v. Penoyre, 13 Ves., *333. The reason for this rule fails in this case, and it therefore has no application: Earle v. Bellingham, 24 Beav., 448; Wheeler v. Ruthven, 74 N. Y., 428; Tripp v. Frazier, 4 Har. & J., (Ind.), 446.

Not one of the cases cited by appellees is analogous to the case at bar, or presents any points of resemblance to it except that the payment of a legacy was postponed in each.

There is one particular, however, in which the case at bar differs from all the cases cited, and that in a matter of such importance as to determine the case.

It is evident that the trust relation of the executors to this fund does not arise until "the closing of the trust deed," which we have seen can happen only "after the decease of all the said annuitants." The fund is not given to them, subject to the rights of the trustee under the deed, or in remainder after the death of the annuitants. The testator gives "any balance remaining in the hands of the Pennsylvania Co., etc., resulting from the closing of the trust deed, etc." They take nothing during the life of the annuitants. The mind of the testator looked forward to the time when the trust deed should be closed by the death of the annuitants; and taking no heed of intervening time or circumstances, it saw a "balance . . . . . resulting" from the closing of the deed, and seized that "balance" and bequeathed it to his executors. They took that and nothing more. Their duties relating to it began then and not before. Up to that time their trust relating to it had no

existence. The testator did not direct the trust to arise until the closing of the trust deed and their receipt of the money. Their duty to use the fund "to carry out the purposes and intentions" in the will theretofore expressed arose after the receipt of the fund.

When the fund was received, and they came to ascertain "the purposes declared, expressed or directed" in the will, they would find a direction to pay $10,000 to the Industrial and Beneficial Institute of Frankford," but not $21,903.05. The testator never intended that the Institute should ever receive such a sum from his executors. The construction of the will is sustained by the closely analogous case of Lord v. Lord, L. R., 2 Chancery App., 782.

*George L. Crawford, (John Schallcross* with him), for appellees.—General pecuniary legacies, including gifts of appointment under a power, are payable at the end of a year from the testator's death : Tatham v. Drummond, 2 H. & M., 262. And where no time for payment is fixed, interest runs from that time, even though the legacy is directed to be paid out of a particular fund when recovered, and it may not be recovered for a long time thereafter : Entwistle v. Markland, 5 Ves., 527 : Sitwell v. Bernard, 5 Ves., 534 to 543. A legacy given out of a fund when the same shall be recovered, when received, when got in, when laid out, etc., follows the legal presumption of carrying interest from the year after the death, to vary which requires the most plain and distinct indication of an intention to postpone the payment : Wood v. Penoyre, 13 Ves., 334 to 336; Kirkpatrick v. Bedford, 4 App. Cas., 104, 111; Kerr v. Dougherty, 17 Hun, 341. It is the general settled rule that pecuniary legacies, whether the fund out of which they are payable bears interest or not, bear interest from the year after the testator's death if there should be at any time a fund for their payment : Pearson v. Pearson, 1 Schoales & Lefroy, 12 ; in which case Lord Redesdale said he remembered the case of Greening v. Baker, in which the fund did not become disposable for payment of the legacies until nearly forty years after the testator's death, yet interest was allowed.

The rule is not altered by the fact that the legacy is charged upon the personalty and a reversionary interest in realty, and the personalty is insufficient. In Freeman v. Simpson, 6 Sim., 75, the testator gave a legacy of $300, and gave all his realty and personalty to his wife for life, so that the legacy could not be paid until her death, yet the legacy was held to bear interest from the year after the testator's death, and the personalty not being sufficient to pay the debts, the legatee was not entitled to have the legacy and interest raised by sale of the

realty. In Gough *v.* Bult, 16 Sim., 323, the testator, who died in 1823, directed the trustees of his will to raise a legacy by sale of his realty, and on a bill of administration filed in 1847, the legacy being still unpaid, the legatee was awarded his legacy with interest from the year after the testator's death. These principles were enforced by Lords Cottenham and Wynford in Earl of Milltown *v.* Trench, 4 Cl. & Fin., 310, 1, 2–4, 5. *In re* Blanchford, 27 Ch. Div., 676.

The rule is in full force in Pennsylvania : Houston's Appeal, 9 W., 477; Martin *v.* Martin, 6 W., 67; Lynde's Appeal, 12 W. N. C., 104.

This case shows that the notion that the intent of the testator that the principal of the legacy should be invested, and the income only yearly consumed for the charity, will preclude the legatee from receiving the accumulations of years of past income unpaid, in a lump, is erroneous, and the rule of construction, that where a fund is directed to be at once set apart from the rest of the testator's estate, it carries the income from the testator's death; Boddy *v.* Dawes, 1 Keen, 362; Dundas *v.* Wolfe Murray, 1 H. & M., 425; Johnson *v.* O'Neill, 3 L. R. Ir., 476; Laporte *v.* Bishop, 11 Harris, 152; Cooper *v.* Scott, 12 P. F. S., 139; Page's App., 21 P. F. S., 405; would prevent such a result.

And the Act of Assembly of February 24th, 1834, sec. 51, Brightly's Purdon, 555, sec. 231, providing that "Legacies, if no time be limited for the payment thereof, shall in all cases be deemed due and payable at the expiration of one year after the death of the testator," giving a statutory force to the strong legal presumption requiring clear expression of the testator's intent to postpone the running of interest, concludes the question in Pennsylvania.

Mr. Justice GREEN delivered the opinion of the court, October 4th, 1886.

The legacy of ten thousand dollars to the appellee was absolute, without any condition as to its payment, and no time of payment was expressed in the will which gave it. Literally, the case, as to the question of interest, comes directly within the words of the Act of 24th February, 1834, § 51, which provides that, "Legacies, if no time be limited for the payment thereof shall, in all cases, be deemed to be due and payable at the expiration of one year from the death of the testator." This legislation supplies a testamentary intent and hence where it is claimed that a money legacy shall not bear interest from the expiration of one year after the testator's death, the contention must be supported by a clear evidence of an intent contrary to the act to be found in the will of the

testator. This doctrine was long ago asserted, and has ever since been followed by this court. Thus, in the case of Huston's Appeal, 9 Watts, 472, we said "the general rule of giving interest to the legatee from the expiration of the year, is not to be extended or converted upon slight inferences of intention, nor will it yield to the impossibility of getting in the estate so as to pay the legacy within the year allowed for that purpose. And even though the legacy is to come out of a part of the testator's estate which can not be recovered for a long time after the year, and the testator directs the legacy to be paid when the money which is to constitute it can be recovered, still the payment of interest, if practicable, or at least the computation of it, will commence from the end of the year after the testator's decease," citing Wood *v.* Penoyre, 13 Ves., Jun., 325. The case cited was a very well and carefully considered case, and is sustained by kindred authorities.

The Master of the Rolls having said that his first impression was that the words "when the same shall be recovered," postponed the time of payment, and consequently the right to interest until the mortgage debt, out of which the legacies were payable, should have been actually received and got in, declared that a further examination of the cases had changed his mind, and he stated his ultimate conclusion thus : "Whenever legacies are given out of personal estate, consisting of outstanding securities, those legacies can not be actually paid until the money due upon such securities is actually got in : but by a rule that has been adopted for the sake of general convenience, this court holds the personal estate to be reduced into possession within a year after the death of the testator. Upon that ground interest is payable upon legacies from that time unless some other period is fixed by the will. Actual payment may in many instances be impracticable within that time ; yet in legal contemplation the right to payment exists and carries with it the right to interest until actual payment."

The rule of general convenience thus stated is with a mandatory statute rule by the Act of 1834. The reasons for its adoption do not in England, and can not with us, prevent its application to a given case merely because they do not happen to concur with the facts of such case. Hence, we hold that the direction of the statute must prevail unless there is a clearly expressed contrary intent. In the present case there is no such contrary intent actually expressed. The injunction of the statute is peremptory, and it is founded upon the one fact only that no time is limited for the payment of the legacy. While we do not say that the mere absence of a limitation of the time of payment shall not of itself alone, regardless of the language of the gift and of all the circumstances

attending a given case, suffice to bring the statute into application, we feel bound to say that the reason for not applying it must be of the clearest and most convincing character. There must be language or circumstances apparent upon the face of the will showing that the testator could not have intended the legacy to be payable at the end of the year. This was the case in Earle *v.* Bellingham, 24 Beav. 448, where the fund out of which alone the legacies were to be paid did not come into existence for the purposes of the legacies until after the death of the life tenant. Substantially the same reason existed in Wheeler *v.* Ruthven, 76 N. Y., 428, and in Trippe *v.* Frazier, 4 H. & J., 446. In the case of Lord *v.* Lord, L. R., 2 Chan. Appeal, 782, the Master of the Rolls fully admitted the principle that a legacy bears interest from the end of the year though payable in the future, and that in the case he was considering the legacy would have borne interest if it had been given directly, payable when the litigation was over, based his decision entirely upon the ground that the legacy was given by way of a trust, and that no trust arose or could arise until after the mortgage was collected.

In the case at bar it was not even the fact that the legacy of the appellee was payable by the terms of the will out of the trust funds in the hands of the Pennsylvania Co. etc., though under the decisions, if they had been so payable, that circumstance would not alone have sufficed to prevent the application of the statute. In reality those funds constituted the chief, though not the only, source of the means for paying the legacy, but the gift of the legacy was absolute, and without condition that it should come from that source. Had there been other estate sufficient for the purpose, the existence or the non-existence, of the trust funds, would have been irrelevant in fact, as well as in theory. The circumstance that they were essential to the full liquidation of the legacy is adventitious only, and not vitally essential to the right of the legatee to have the legacy. The surplus of the trust funds not needed for the trust comes to the executors as part of the residue of the estate, and is only made applicable to the payment of the appellee's legacy by the residuary clause. But the legacy itself was completely given by the preceding clause of the will, and the legal right to have it exists by virtue of that clause and not necessarily by virtue of the residuary clause at all. The mere fact of the precedent and independent gift, followed by a bequest of the residue presupposes that there would be a residue after the legacy was paid. The devotion of such part of the residue as might come from the trust funds to the payment of the legacy, was at the best but a cautionary, though not a necessary, provision for the pay-

ment of the legacy. The legacy would have been payable as well without as with that part of the residuary clause which relates to the trust fund. In other words, the right to have the legacy is not made to depend upon whether there was a surplus of the trust fund or not. Legally the legacy was payable out of any part of the testator's estate. If it was actually paid out of the surplus of the trust fund, it was because that fund was part of the residuary estate, and as such was necessary for the purpose, but that circumstance does not affect the legal status of the legatee.

Decree affirmed.