## ESTATE OF JOHN PHILLIPS, DECEASED.

APPEAL BY M. J. BONER ET AL. FROM THE ORPHANS' COURT OF SCHUYLKILL COUNTY.

Argued February 19, 1890—Decided March 24, 1890.
[To be reported.]

1. The provision of § 51, act of February 24, 1834, P. L. 83, that if no time be limited for their payment, legacies shall be due and payable at the expiration of one year from the testator's death, was declaratory

### Statement of Facts.

merely of the law as it had previously existed, and its effect is to supply a testamentary intent when none is expressed in the will.

2. It is only when the testator's intention as to whether legacies shall or shall not bear interest from his death, has not been expressed in the will, that the artificial rules stated in Townsend's App., 106 Pa. 273, under which interest is allowed upon legacies to children by way of maintenance, and in some other instances, are resorted to, to supply that intention.

(*a*) A testator bequeathed to a trustee certain sums, in trust to invest the same and pay the income thereof to his widow and four of his children, respectively, in half-yearly instalments, authorizing the trustee to accept securities belonging to the estate, in lieu of money, in the liquidation of these bequests, and providing that said bequests should be paid to the trustee at the convenience of the executors, and without interest.

(*b*) The widow and one of the children had no independent means of support. The widow elected not to take under the will. Among the assets of the estate were interest-bearing securities, more than sufficient to pay all the legacies given by the will. Thirteen months after the testator's death the executors paid to the trustee the sums bequeathed for the benefit of the four children, partly in cash and partly in such securities:

3. While the executors had no arbitrary discretion as to the time of paying the bequests, yet, as it did not appear that they had acted arbitrarily in fixing the time of payment, the delay being caused chiefly by the beneficiaries themselves, the latter were not entitled, on distribution, to receive the income accruing upon the principal of the bequests between the testator's death and the time of payment.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS and MITCHELL, JJ.

No. 92 January Term 1890, Sup. Ct.; court below, number and term not given.

On February 2, 1888, Edward J., Thomas H. and A. Lincoln Phillips filed their first account as executors of the will of John Phillips, deceased. The account showing a balance in the hands of the accountants, *Mr. John W. Roseberry* was appointed auditor, for the purpose, inter alia, of reporting a distribution of said balance.

The auditor filed a report finding the facts in substance as follows :

John Phillips, the testator, died on March 6, 1887. His last will bears date August 27, 1885, and was admitted to probate on March 28, 1887, providing as follows :

"I give and bequeath the sum of $28,000 to the Pennsylva-

Statement of Facts.

nia Company for Insurance on Lives and Granting Annuities, to have and to hold the same in trust as follows:

" 1. In trust to invest the same in good and lawful securities, to collect and receive the annual income or profit arising therefrom, and to pay the said annual income or profit, less all proper costs and charges, in half-yearly instalments to my daughter Martha Jane Boner, wife of Lewis S. Boner, during her natural life (while covert, and also if at any time discovert or again covert) free and clear of any liability for the debts of her present or any future husband, and not subject to anticipation, the individual receipt of the said Martha Jane, notwithstanding her coverture, to be a good and sufficient voucher."

The will then declared that upon the death of said Martha Jane the bequest should be subject to certain other trusts.

Similar bequests of $28,000 were made to the same company, in trust to pay the income in half-yearly instalments to his daughter, Catharine Ann Williams, wife of Henry L. Williams, during her life and the life of her said husband, and after their decease the principal to be divided, etc.; of $35,000, in trust to pay the annual income in half-yearly instalments to his son, Hugh Phillips, during his life and the life of his wife, and after their death the principal to be divided, etc.; of $35,000 in trust to pay the annual income in half-yearly instalments to his daughter, Mary Louisa, during her life, etc. The said four bequests to the said company as trustee amounted in the aggregate to $126,000.

A bequest of $50,000 was also made to the same company, of the same character, in trust to pay the income in half-yearly instalments to his wife, Mary Ann Phillips, during her life etc. She declined to accept under the will and elected to take the interest and share allowed to widows of decedents by the intestate laws of this commonwealth.

The testator further declared and directed in his will as follows:

" And as to each and all of the trusts aforesaid, I order and direct that the said trustee may in lieu of money accept from my executors, hereinafter named, in liquidation of the said bequests and each or any of them, such securities belonging to my estate as shall amount in value to the sum bequeathed; and the said trustee shall have full power to re-invest the trust

moneys whenever and so often as they deem it to be of advantage to their cestuis que trust so to do; . . . . and that the said bequests shall be paid at the convenience of my said executors and without interest."

The testator bequeathed the following legacies, viz.: An annuity of twenty pounds sterling a year to Mrs. Ann Spargo during her life; to his niece, Jane Phillips, $1,000; to Rev. A. M. Woods, 1,000; to the Benevolent Association of Pottsville, $1,000; to the Presbyterian Board of Relief, etc., $1,000. He also bequeathed and devised to his wife the use and occupation of the homestead, together with all the furniture and household goods, horse, carriage, etc., during her natural life; the bequest made in trust for her and the devise to her of the use of the house, furniture, etc., to be in lieu of her right of dower in his estate, and in full satisfaction of all claims upon his estate. The rest and residue of his estate, real, personal and mixed, he devised in equal portions to his three sons, Edward J. Phillips, Thomas H. Phillips and Abraham Lincoln Phillips, and their heirs, and appointed them the executors of his will.

The inventory and appraisement filed in the register's office showed the following personal property of the decedent:

| | |
|---|---:|
| Corporate stocks | $120,765.00 |
| Corporate bonds | 89,100.00 |
| Mortgages | 22,517.58 |
| Judgments, notes, and due-bills | 8,905.00 |
| Bank deposits, cash and rents | 2,462.57 |
| Goods and chattels, etc. | 3,465.05 |
| | $247,215.20 |

The real estate of the decedent was of the estimated value of from $100,000 to 120,000.

On January 21, 1888, Martha J. Boner and Catharine A. Williams, with their husbands and Mary Louisa Phillips, filed a bill in equity against the executors, praying for an injunction to restrain them from paying over to the trustee the sum of $126,000, or any part thereof, in cash, in liquidation of their legacies; and that they be ordered to pay over to the plaintiffs in the bill the income received by them, since the death of the testator, from $126,000 of said securities, in the proportions provided in the will, and to pay over to the trustee $126,000,

in such securities as the trustee might be willing to accept in liquidation of said bequests. The executors having answered denying the averments of fact upon which the prayers for relief were based, a preliminary injunction which had issued was dissolved, and on April 14, 1888, the executors paid to the trustee, in securities of the estate at their market value and in money, $126,000, in liquidation of the bequests, as follows:

| | |
|---|---:|
| In securities . . . . . . . | $86,640 |
| In money . . . . . . . . | 39,360 |
| | $126,000 |

Martha J. Boner, Catharine A. Williams, Hugh Phillips and Mary Louisa Phillips claimed before the auditor that, under the facts found, they were entitled to receive, in the distribution to be made by the auditor, the income or interest which accrued from the money and securities making up the $126,000 paid to their trustee under the will, from the testator's death to the time of payment to the trustee, contending that it was the intention of the testator, as manifested in his will, that they should receive such accruing income. The accountants denied the right of the claimants to such income and contended that the same belonged to themselves as the residuary legatees. The auditor, after citing and reviewing a number of authorities, and discussing the questions involved at length, reported his conclusion that the cestuis que trust in the bequests to the Pennsylvania Co. were not entitled to the income claimed, and awarded it to the residuary legatees.

Exceptions to his findings and conclusions were filed with the auditor, alleging, inter alia, that the auditor erred:

1. In not finding as a fact that there came into the hands of the accountants, on the death of the testator, interest-bearing securities more than sufficient to pay all the legacies and bequests, contained in the will of the testator, after payment of the debts of the testator.

2. In not finding as a fact, according to the sworn testimony of the accountants, " that they had always been willing and ready to liquidate the larger portion of said bequests by transferring to said trust company, at their market value, such securities belonging to the estate as would be accepted by said trust company," and that on the " eighteenth day of April,

1887, the said trust company agreed to accept securities in liquidation of said trusts."

Upon these exceptions the auditor reported as follows:

With respect to the first exception, the auditor finds the fact as therein stated. The fact was not denied by the accountants. The auditor did not, nor does he now, consider the fact as materially affecting the distribution.

With respect to the second exception, it does appear from the affidavit of defence filed by the accountants to the bill in equity, which is admitted as an answer to the bill, that the facts are as alleged in said exception, but in connection therewith appears the undisputed fact that for a considerable time after the granting of letters testamentary, the exceptants or some of them, were making an effort to induce the trust company to relinquish the trust, and suggested that the executors should pay over the income to them and let the trust company bring an action to enforce the trust, which the executors declined to do, and informed them that unless they were restrained by injunction within the time prescribed by law, they would pay the bequests according to the testator's will, and that these negotiations and the dissatisfaction of the exceptants were the chief cause of the delay in the liquidation of the bequests to the trust company.

These facts taken together were not considered material by the auditor in the disposition of the matters in issue. The auditor therefore in reviewing the exceptions sees no sufficient reason to change his report. Hence he overrules the exceptions and sustains his conclusions of law.

The exceptions, being renewed before the court, were overruled, GREEN, J., filing an opinion thereon as follows:

After a careful examination of the report of the auditor, and the exceptions filed thereto, we feel satisfied that he has come to a proper conclusion as to the construction to be put upon the will of John Phillips, deceased. Nor can we add much to what the auditor has decided, nor do we intend to.

The main question in dispute was whether the legatees were entitled to interest from the death of the testator, on the principal sum to be invested for them by the trustee. This was contended for, on the principle, well settled in this state, that

when the legacy is not of a gross sum, but of an income or interest, for his support, then the legatee is allowed it from the death of the testator. The auditor has shown why, under the terms of the will, this could not have been the intention of the testator in the present instance; first, because the executors were to pay the bequests over to the trustee at their convenience; and second, because it was to be paid without interest. To these reasons might be added a third, that the cestuis que trust were only interested in the income as it might come through the trustee. It was the trustee who was required to receive the money from the executors and invest it, and pay over the income from it, in half-yearly instalments to the cestuis que trust. The fact that the money was to be paid over to the trustee, to be by him invested and the income arising from this investment to be paid to the legatees, refutes the idea that the principal sum was to carry interest from the time of the death of the testator. The testator must have had in his mind that some time must necessarily elapse between his death and the payment of the moneys to the trustee and their investment, and when he therefore directed that the income should be paid out of the investments made by the trustee, it shows clearly in connection with the other reasons given, that it was not intended that these bequests should bear interest from the death of the testator.

The exceptions to the report of the auditor being dismissed and the report confirmed, the claimants, Martha J. Boner and others, took this appeal, specifying that the court erred:

1. In refusing to award to the appellants the income claimed by them.

2. In awarding said income to the residuary legatees.

*Mr. E. D. Smith* and *Mr. John W. Ryon*, for the appellants:

1. The bequests made in trust for the appellants and the widow were not of a gross sum, but of annual income only, to be paid in half-yearly instalments. In such cases the rule is that the legatee of interest for life is entitled to the interest from the death of the testator: Eyre v. Golding, 5 Binn. 472; Hilyard's Est., 5 W. & S. 30. The fact that the widow refused to take under the will, cannot affect its interpretation.

Arguments.

As no provision was made for her and for maintaining the house and horse given to her for life, independent of the income of the $50,000 given in trust for her, she is clearly entitled to interest from her husband's death: Bitzer v. Hahn, 14 S. & R. 241; Landis v. Landis, 2 Pears. 109; Townsend's App., 106 Pa. 273. And as the provision in the will as to the payment of the legacies in trust, is general, applying as well to those for the benefit of his daughters, particularly his unmarried daughter, Mary Louisa, for whom no other provision is made, as to the one for the benefit of his wife, the decision of the question in favor of the latter, must be decisive of the rights of the appellants.

2. A most important fact, evidently lost sight of by the auditor and court below, is that the testator left a large personal estate, over and above the amount of all his debts and funeral expenses, consisting of mortgages and corporate stocks and bonds. These were valuable investments such as the will contemplated, and they remained intact until the day of payment to the trustee. They were more than sufficient to pay all bequests and the widow's portion. In such circumstances, the appellants, and not the residuary legatees, are morally and legally entitled to the income claimed in this proceeding: Hewitt v. Russell, 1 Turn. & R. 241; Hilyard's Est., 5 W. & S. 30; Landis v. Landis, 2 Pears. 109; Sergeant's Est., 9 Phila. 346; Bird's Est., 2 Pars. 168; Townsend's App., 106 Pa. 268; Cooper v. Scott, 62 Pa. 139. The facts of the present case are identical with those of Bird's Estate, and strikingly similar to those of Townsend's Appeal. If it be claimed that the fact that two of the appellants were married refutes the inference that the bequests were intended for support and maintenance, it is only necessary to recall that the beneficiary in Eyre v. Golding, 5 Binn. 472, was a married daughter, in Hilyard's Est., supra, a sister, and in Cooper v. Scott, supra, an illegitimate son.

3. To all this weight of legal authority the residuary legatees oppose three positions: First, they say that, as their father evidently intended to put their mother and the appellants on a worse footing than themselves as to the principal, it follows that he intended to do the same as to the interest. But the fair conclusion is just the contrary. In the second place, they say

Arguments.

they are not trustees for the appellants, who are entitled to interest only as it might come through the trustee, and that the legacies are expressly payable at the convenience of the executors. The fallacy of these propositions is fully shown by Pennsylvania Co.'s App. in Brown's Est., 41 Leg. Int. 26, and Page's App., 71 Pa. 405. If the provision for payment at the convenience of the executors were construed as leaving the time of payment to their pleasure, without any benefit to the appellants from the income till payment is made, they can defeat the will entirely by not paying at all. We claim that it means that the bequests shall be paid when the executors come into the possession of sufficient assets, and they did so immediately after the testator's death. If, however, it is construed as referring to the statutory period, then the appellants are entitled to the income which accrued thereafter. Lastly, it is said that the legacies are expressly payable without interest. But the income is not interest as to the appellants; it is principal as to them: Addams v. Heffernan, 9 W. 543. The construction contended for by the residuary legatees is at variance with the whole tenor of the will.

*Mr. F. W. Bechtel* for the appellees:

1. The facts that are before the court show that the delay in payment is attributable to the litigiousness of the appellants, and that would have the effect of suspending interest, even if it had already commenced to run: Vandergrift's App., 80 Pa. 118. But the intention that these legacies should not bear interest clearly appears in the will of the testator. It differs from the wills involved in all the cases cited by the appellants. In all of them the same persons were both executors and trustees for investment; and if that were the case here, the trustee might be regarded as having possession of the fund for investment from the date of the testator's death. But in this case the executors were trustees for collection and distribution simply. In various other respects the present case differs from those cited on the other side and none of them are applicable to it.

2. It is conceded that when the interest of a sum of money is directed to be paid by an executor to a legatee annually, the interest runs from the death of the testator, because the

bequest is in the nature of an annuity and is to be paid, not out of the income of the principal, but out of the corpus of the estate: Swett v. Boston, 18 Pick. 123. In the present case, the testator's intention was that the legatees should not receive interest until they received it by and through their trustee. When no other time is designated in the will, the legacies are payable at the end of a year: Koon's App., 113 Pa. 621. It is said the testator intended interest should be paid, because he made no provision for the widow's mainte-nance during the year. But she is not here complaining, and, moreover, a widow is not upon the same footing, as to mainte-nance, as a minor child: Gill's App., 2 Pa. 222.

OPINION, MR. JUSTICE CLARK:

The facts of this case are substantially as follows:

John Phillips, who died on the 6th day of March, 1887, by five separate bequests contained in his last will and testament, bearing date the 27th day of August, 1885, and admitted to probate on the 28th day of March, 1887, gave to the Pennsyl-vania Company for Insurance on Lives & Granting Annuities, $50,000 in trust for his widow, Mary Ann Phillips; $28,000 in trust for his daughter, Martha Jane Boner; $28,000 in trust for his daughter, Catharine Ann Williams; $35,000 in trust for his son, Hugh Phillips; and $35,000 in trust for his daugh-ter, Mary Louisa Phillips, as follows: "In trust, to invest the same in good and lawful securities, to collect and receive the annual income or profit arising therefrom, and to pay the said annual income or profit, less all proper costs and charges, in half-yearly instalments, to" the person named, free and clear from all liability for debts, etc.; "and, as to each and all of the trusts aforesaid, I order and direct that the said trustee may in lieu of money accept from my executors, hereinafter named, in liquidation of the said bequests, and each or any of them, such good securities belonging to my estate as shall amount in value to the sum bequeathed, . . . . and that the said bequests shall be paid at the convenience of my said executors, and without interest." He made four bequests to individuals and charities, of $1,000 each; gave the use of his house and household goods to his wife for her life, which, with the bequest in trust, was in full of all claims by her on his estate; gave the use of the

houses occupied by his daughters to them, and devised the rest
and residue of his estate, in equal shares, to his three sons,
Edward John Phillips, Thomas H. Phillips, and A. Lincoln
Phillips, and their heirs, forever, and appointed them the exec-
utors of his will.   On April 5, 1887, the widow notified the
executors of her refusal to accept the provision made for her in
the will of her husband, and of her election to take under the
intestate laws of the commonwealth.   On April 16, 1887, the
executors filed an inventory and appraisement of the personal
estate, amounting to $247,215.20.   The real estate of the tes-
tator was of the estimated value of $100,000 to $120,000.

The appellants' contention is that they are entitled to have
interest upon the bequests made for their benefit, from the
date of the testator's decease until the date of payment thereof
to the trustee.   Whether this is so or not, depends upon the
intention of the testator, to be gathered from the body of the
will under the ordinary rules of construction applicable in such
cases.   The fifty-first section of the act of February 24, 1834,
provides that "legacies, if no time be limited for the payment
thereof, shall in all cases be deemed to be due and payable at
the expiration of one year from the death of the testator."
This section was declaratory merely of the law as it had pre-
viously existed: Wood v. Penoyre, 13 Ves. 326; Huston's
App., 9 W. 477 ; it supplies a testamentary intent, where none
is expressed in the will: Koon's App., 113 Pa. 621.

To this rule, however, as remarked by our Brother STERRETT
in Townsend's App., 106 Pa. 273, "there are some well-recogniz-
ed exceptions, such as a legacy by a parent to his child, or by one
in loco parentis, by way of maintenance, where the possession
of the principal is deferred; a legacy to a widow in lieu of
dower, where no other means for her support is provided, and
also where interest in the nature of an annuity is given, if by
implication from the terms of the instrument, the legacy is
given for support," etc.   One of the beneficiaries under the
clauses of this will which give rise to this controversy is the
widow, and another the unmarried daughter of the testator,
neither of whom has any other independent provision for her
support, and for whom no other provision is made in the will;
and it is argued that, under the rule stated in Townsend's Ap-
peal, supra, we must suppose that the testator's intention as to

them, at least, was that they should have interest from the time of his decease by way of support, and that, the testator's intention as to them having been ascertained, the same purpose will be presumed and pursued as to the others, whose legacies are given in precisely the same words.

It is only when the testator's intention has not been expressed in the will that the artificial rules already referred to are resorted to, to supply that intention. In this instance, however, the testator has in very plain words expressed his intention that these bequests were to be paid to the trustee, at the convenience of his executors, without interest, and that the income thereof was payable by the trustee to the beneficiaries, and not by the executors. The executors, of course, had no absolute, arbitrary discretion in the matter; they were bound to pay whenever, according to their judgment, exercised in a reasonable manner, it was safe and suitable for them to do so, and when payment could not reasonably be supposed to involve them in any danger or difficulty. To this extent, he confided in his executors and invested them with the exercise of a discretion, for their own protection as well as for the interest of those beneficially interested in the estate. After the testator's death, the widow elected to reject the provisions made for her in the will, and to take under the intestate law. It seems, also, that the appellants, or some of them, for a considerable time after the granting of the letters, were making an effort to induce the Pennsylvania Company for Insurance on Lives, etc., the trustee, to relinquish the trust, and desired the executors to pay the legacies over to them directly, and that these negotiations, and the dissatisfaction of the appellants with the trustee, "were the chief causes of the delay in the liquidation of the bequests to the trust company."

In fixing a convenient time for payment of these bequests, the executors do not appear to have exercised their discretion in any arbitrary way, much less to have acted in any bad faith; the delay being mainly attributable, as the auditor finds, to the acts of the appellants themselves. In view of all the circumstances, therefore, we are of the opinion that the auditor and the court were right in refusing to allow the interest.

The decree of the Orphans' Court is affirmed, and the appeal dismissed, at the cost of the appellants.